ANNE MARIE ELLIS (SBN 223437)
ROBIN H. JUNG (SBN 271894)
ROBERT B. HINCKLEY JR. (SBN 290786)
BUCHALTER, A Professional Corporation
1000 WILSHIRE BLVD STE 1500
LOS ANGELES, CA 90017
Telephone: (213)-891-0700
Facsimile: (213)-896-0400
Email: aellis@buchalter.com
       rhinckley@buchalter.com
       rjung@buchalter.com

Attorneys for Plaintiff, BERKLEY ASSURANCE COMPANY, Individually and as Subrogee on behalf of ARTE SANO, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKLEY ASSURANCE COMPANY, an Iowa Corporation, Individually and as Subrogee on behalf of ARTE SANO, LLC<br><br>Plaintiffs,<br><br>vs.<br><br>OLAM AMERICAS, INC., a Delaware Corporation; SMIRK'S LTD., a Colorado Limited Liability Company; DOES 1 – 50, Inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Complaint Filed:<br>Trial Date: |

Plaintiff BERKLEY ASSURANCE COMPANY ("Berkley"), Individually and as Subrogee on behalf of ARTE SANO, LLC ("Arte Sano"), by and through undersigned counsel, respectfully submit this Complaint and Jury Demand as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Arte Sano is a gluten free food manufacturing company with a mailing address of 6110 Trade Center Drive, Suite 102B, Austin, Texas 78744 and a registered office street address of 6600 Marble Creek Loop, Austin, Texas 78747. The sole member of Arte Sano is Ixpalia, Inc. d/b/a Fiesta Tortilla, which is a Texas

corporation with a mailing and street address in Austin, Texas. Arte Sano is therefore a citizen of Texas for the purposes of this Court's diversity jurisdiction.

2. Subrogree Berkley Assurance Company ("Berkley") is an insurance company incorporated in Iowa with a principal place of business in Arizona. Berkley is therefore a citizen of either Iowa or Arizona for the purposes of this Court's diversity jurisdiction. At all times material to this action, Berkley insured Arte Sano through Product Recall Insurance Policy No. BGPR010103, effective August 8, 2019 to August 3, 2020.

3. Olam International Limited is a Singaporean food manufacturing company doing business worldwide. Pertinent here, Olam International Limited conducts business in the United States through its subsidiary, Olam Americas, Inc. ("Olam"). Olam is a Delaware corporation with a principal place of business and mailing address of 205 East River Park Circle, Suite 310, Fresno, California 93720. Olam is therefore a citizen of Delaware and California for the purposes of this Court's diversity jurisdiction.

4. Smirk's Ltd. ("Smirks") is a food ingredient importing company formed as a limited liability company in Colorado with a principal office street address as 17601 US Highway 34, Fort Morgan, Colorado 80701. The sole member of Smirks is Erker Grain Company, which is a Colorado corporation with a principal place of business and mailing address of 68 Preserve Drive, Fort Morgan, Colorado 80701. Smirks is therefore a citizen of Colorado for the purposes of this Court's diversity jurisdiction.

5. Jurisdiction and venue are proper in the United States District Court for the Eastern District of California, located in the city of Fresno, given that a substantial part of the events giving rise to this action occurred in Fresno, California.

6. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(a) as the action is between citizens of different states, and the

amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## GENERAL ALLEGATIONS

7. Arte Sano uses alternative flours to manufacture grain free tortillas and chips for one customer, Siete Foods. At all times relevant to this action, Arte Sano's cashew flour tortillas were manufactured using cashew flour produced by Olam.

8. Olam is a supplier of various agriculture products and food ingredients, including cashew flour. At all times relevant to this action, Olam received raw cashews from Vietnam and processed such raw cashews into cashew flour using Olam's facilities in California. As a manufacturer who supplies raw food products, such as cashew flour, to importers, Olam knew or should have known that its raw food products would ultimately be used by the final customer to make food products such as tortillas.

9. Smirks imports various food ingredients for the baking, snack food, and grocery industries. At all times relevant to this action, Smirks imported the cashew product at issue and acted as a liaison between Olam and Arte Sano.

10. On October 23, 2019, Arte Sano submitted a purchase order (P.O. No. 1181) to Smirks seeking 35,000 pounds of cashew flour for a total price of $116,550. A true and correct copy of the purchase order is attached herein as "Exhibit A."

11. Soon thereafter, Smirks confirmed the sale to Arte Sano in writing noting the Arte Sano purchase order number of 1181 and Smirks sales order number of 48311.

12. Upon information and belief, Smirks, in turn, entered into a sales contract with Olam for the sale and purchase of cashew flour.

13. Olam fulfilled the cashew flour order for Arte Sano by way of Smirks, the intermediary for same. Specifically, Olam used raw cashews to manufacture the cashew flour ordered.

14. On November 18, 2019, a Smirks issued a Certificate of Analysis approving "Product: Cashew Nut F1" bearing lot #6600023175/1, as produced on November 11, 2019. The Certificate of Analysis was approved and signed by Levi Drew, a Quality Assurance Specialist at Smirks. A true and correct copy of the Certificate of Analysis is attached herein as "Exhibit B."

15. Thereafter, Arte Sano received lot #6600023175/1 of Olam's cashew flour.

16. Arte Sano paid Smirks in full for receipt of lot #6600023175/1 of Olam's cashew flour.

17. On April 27, 2020, Arte Sano discovered a piece of metal wire during a mid-production visual inspection of cashew flour tortillas.

18. The next day, Arte Sano discovered a second piece of metal wire in finished goods on the same production line.

19. Additional visual inspections of finished goods from April 27 and April 28, 2020 yielded 20 pieces of metal wire in total. Cashew flour tortillas were the only products affected by the contamination.

20. More specifically, the cashew flour used on April 27 and April 28, 2020 corresponded to a single lot: #6600023175/1.

21. Further, cashew flour is an ingredient unique to Arte Sano's cashew flour tortillas.

22. On May 13, 2020, a customer complaint reported identification of a wire fragment in cashew flour tortillas produced on March 2, 2020. The same single lot of cashew flour was used to produce cashew flour tortillas on March 2, 2020: lot #6600023175/1.

23. On May 15, 2020, Arte Sano initiated a nationwide Class II recall of 7,260 cases (38,115 lbs) of finished cashew flour tortillas via recall number F-0959-2020.

///

24. Between May 2020 and December 2020, Arte Sano investigated the cause of the contamination through the use of third-parties. All information obtained during the course of such investigations continued to indicate lot #6600023175/1 was the source of the contamination.

25. On or about March 22, 2022, Arte Sano (through counsel and at the direct request of representatives from both Olam and Smirks) received final confirmation from a third-party investigator that cashew flour lot #6600023175/1 was the source of the contamination for both the contaminated finished cashew flour tortillas as well as the contaminated sealed, unopened boxes of cashew flour from Olam. Specifically, and by way of example only:

   a. Several bronze wire fragments were found within sealed, unopened boxes of cashew flour lot #6600023175/1 from Olam.
   b. SEM/EDS analysis of the wire fragments in the finished tortillas was consistent was with the wire fragments found within the sealed, unopened boxes of cashew flour lot #6600023175/1.
   c. Bronze wire is not present in Arte Sano's production facility.
   d. No evidence was found to suggest that other ingredients or the environment contributed to this contamination event.

26. Arte Sano suffered injuries, damages, and losses as a result of the contamination at issue that total at least $380,000.

27. As mentioned above, Arte Sano maintained an insurance policy with Berkley that was in effect at all times relevant to Arte Sano's claims against Defendants in this case.

28. After discovering the above-mentioned product contamination issues, Arte Sano initiated a claim with Berkley for the injuries, damages, and losses Arte Sano incurred as a result of Defendants' actions or inactions contributing to and/or causing the contamination at issue.

///

29. Berkley made certain payments to Arte Sano pursuant to the effective insurance policy. As a result, Berkley retains an interest as subrogee in this action.[1]

## FIRST CLAIM FOR RELIEF

(Breach of Contract against Defendant Smirks)

30. The allegations of paragraphs 1 through 29 are included herein.

31. On or about October 23, 2019, Arte Sano and Smirks entered into a contract for the sale of 35,000 pounds of uncontaminated cashew flour for a total price of $116,550 (Purchase Order No. 1181 and Smirks Sales Order No. 48311).

32. Pursuant to the contract, Arte Sano paid Smirks in full for receipt of lot #6600023175/1 of cashew flour.

33. As mentioned above, Arte Sano discovered pieces of metal wire in its cashew flour tortillas on April 27 and April 28, 2020. Arte Sano also received a customer complaint on May 13, 2020 about wire fragments in cashew flour tortillas produced on March 2, 2020. Arte Sano traced all the metal wire to contaminated cashew flour from lot #6600023175/1.

34. On May 15, 2020, Arte Sano initiated a nationwide Class II recall of 7,260 cases (38,115 lbs) of finished cashew flour tortillas via recall number F-0959-2020.

35. Between May 2020 and December 2020, Arte Sano investigated the cause of the contamination through the use of third-parties. All information obtained during the course of such investigations continued to indicate lot #6600023175/1 was the source of the contamination.

36. On or about March 22, 2022, Arte Sano (through counsel and at the direct request of representatives from both Olam and Smirks) received final confirmation from a third-party investigator that cashew flour lot #6600023175/1

---

[1] Arte Sano acknowledges and gives notices that this is, in part, a subrogation lawsuit brought by Berkley for a portion of the losses described herein. Having made payments to Arte Sano under the effective insurance policy, Berkley now stands in the shoes of their insured and assert their claims herein. Arte Sano is also asserting claims in this lawsuit to recover damages that Arte Sano sustained directly and that were not covered by the effective insurance policy.

was the source of the contamination for both the contaminated finished cashew flour tortillas as well as the contaminated unopened boxes of cashew flour. Specifically, and by way of example only:

    a. Several wire fragments were found within unopened boxes of cashew flour lot #6600023175/1.

    b. SEM/EDS analysis of the wire fragments in the finished tortillas was consistent was with the wire fragments found within the unopened boxes of cashew flour lot #6600023175/1.

    c. No evidence was found to suggest that other ingredients or the environment contributed to this contamination event.

37. Instead of providing 35,000 pounds of uncontaminated cashew flour as was contracted by Arte Sano through Purchase Order No. 1181 and Smirks Sales Order No. 48311, Smirks instead delivered cashew flour that was contaminated with metal wire fragments.

38. Arte Sano suffered injuries, damages, and losses as a result of the contamination at issue, including the monetary and reputational cost of a nationwide Class II recall of 7,260 cases (38,115 lbs) of finished cashew flour tortillas via recall number F-0959-2020.

39. Smirk's failure to provide uncontaminated cashew flour and subsequent breach of contract was a substantial factor in causing Arte Sano's harm.

## SECOND CLAIM FOR RELIEF

(Breach of Contract (third-party beneficiary) against Defendant Olam)

40. The allegations of paragraphs 1 through 29 are included herein.

41. Upon information and belief, Smirks, entered into a sales contract with Olam for the sale and purchase of cashew flour.

42. Arte Sano was not a party to the sales contract between Smirks and Olam. However, upon information and belief, a motivating purpose of Smirks and

Olam was for Arte Sano to benefit from their contract, and Smirks and Olam intended for Arte Sano to benefit from their contract.

43. Olam fulfilled the cashew flour order for Arte Sano by way of Smirks, the intermediary for same. Specifically, Olam used raw cashews to manufacture the cashew flour ordered.

44. As alleged herein, the cashew flour manufactured by Olam and provided to Arte Sano by Smirks was contaminated.

45. Arte Sano suffered injuries, damages, and losses as a result of the contamination at issue, including the monetary and reputational cost of a nationwide Class II recall of 7,260 cases (38,115 lbs) of finished cashew flour tortillas via recall number F-0959-2020.

46. Olam's failure to manufacture uncontaminated cashew flour and subsequent breach of contract was a substantial factor in causing harm to Arte Sano, the third-party beneficiary to the sales contract between Olam and Smirks.

## THIRD CLAIM FOR RELIEF

(Breach of Implied Duty to Perform with Reasonable Care

against Defendant Smirks)

47. The allegations of paragraphs 1 through 29 are included herein.

48. The October 23, 2019 contract between Smirks and Arte Sano required that Smirks provide 35,000 pounds of cashew flour. It is implied in the contract that this performance will be done competently and with reasonable care.

49. However, Smirks failed to use reasonable care in providing the cashew flour to Arte Sano, as the cashew flour was contaminated, as alleged above.

50. Arte Sano suffered injuries, damages, and losses as a result of the contamination at issue, including the monetary and reputational cost of a nationwide Class II recall of 7,260 cases (38,115 lbs) of finished cashew flour tortillas via recall number F-0959-2020.

///

## FOURTH CLAIM FOR RELIEF

(Breach of Implied Warranty of Merchantability against Defendant Smirks)

51. The allegations of paragraphs 1 through 29 are included herein.

52. On or about October 23, 2019, Arte Sano and Smirks entered into a contract for the sale of 35,000 pounds of uncontaminated cashew flour for a total price of $116,550 (Purchase Order No. 1181 and Smirks Sales Order No. 48311).

53. At the time of purchase, Smirks was in the business of selling cashew flour.

54. As alleged herein, the cashew flour sold to Arte Sano by Smirks was contaminated.

55. Therefore, the cashew flour that Smirks sold to Arte Sano:
   a. was not of the same quality as cashew flour generally acceptable in the trade;
   b. was not fit for the ordinary purposes for which cashew flour is used; and
   c. did not conform to the quality established by the parties' prior dealings or by usage of trade.

56. Arte Sano took reasonable steps to notify Smirks within a reasonable time that the cashew flour did not have the expected quality. The foreign material was discovered on April 27 and 28, 2020, and Arte Sano notified Smirks of the contamination in May 2020.

57. Arte Sano suffered injuries, damages, and losses as a result of the contamination at issue, including the monetary and reputational cost of a nationwide Class II recall of 7,260 cases (38,115 lbs) of finished cashew flour tortillas via recall number F-0959-2020.

58. The failure of the cashew flour to have the expected quality was a substantial factor in causing Arte Sano's harm.

/ / /

## FIFTH CLAIM FOR RELIEF

(Breach of Implied Warranty of Merchantability against Defendant Olam)

59. The allegations of paragraphs 1 through 29 are included herein.

60. On or about October 23, 2019, Arte Sano and Smirks entered into a contract for the sale of 35,000 pounds of uncontaminated cashew flour for a total price of $116,550 (Purchase Order No. 1181 and Smirks Sales Order No. 48311).

61. Upon information and belief, Smirks entered into a sales contract with Olam for the sale and purchase of cashew flour.

62. Olam fulfilled the cashew flour order for Arte Sano by way of Smirks, the intermediary for same.

63. Olam knew or should have known that its raw food products would ultimately be used by the final customer to make food products such as tortillas.

64. At the time of purchase, Olam was in the business of manufacturing and selling cashew flour.

65. As alleged herein, the cashew flour provided by Olam by way of Smirks was contaminated.

66. Therefore, the cashew flour that Olam provided to Arte Sano:
   a. was not of the same quality as cashew flour generally acceptable in the trade;
   b. was not fit for the ordinary purposes for which cashew flour is used; and
   c. did not conform to the quality established by the parties' prior dealings or by usage of trade.

67. Arte Sano took reasonable steps to notify Olam within a reasonable time that the cashew flour did not have the expected quality. The foreign material was discovered on April 27 and 28, 2020, and Olam was notified of the contamination in May 2020.

/ / /

68.  Arte Sano suffered injuries, damages, and losses as a result of the contamination at issue, including the monetary and reputational cost of a nationwide Class II recall of 7,260 cases (38,115 lbs) of finished cashew flour tortillas via recall number F-0959-2020.

69.  The failure of the cashew flour to have the expected quality was a substantial factor in causing Arte Sano's harm.

### SIXTH CLAIM FOR RELIEF

(Breach of Implied Warranty of Fitness for

Particular Purpose against Defendant Smirks)

70.  The allegations of paragraphs 1 through 29 are included herein.

71.  On or about October 23, 2019, Arte Sano and Smirks entered into a contract for the sale of 35,000 pounds of uncontaminated cashew flour for a total price of $116,550 (Purchase Order No. 1181 and Smirks Sales Order No. 48311).

72.  At the time of purchase, Smirks knew or had reason to know that Arte Sano intended to use the cashew flour for a particular purpose – to produce tortillas.

73.  At the time of purchase, Smirks knew or had reason to know that Arte Sano was relying on Smirks' skill and judgment to furnish cashew flour that was suitable for the particular purpose of producing tortillas.

74.  Arte Sano justifiably relied on Smirks' skill and judgement.

75.  As alleged herein, the cashew flour sold to Arte Sano by Smirks was contaminated and therefore not suitable for the particular purpose of producing tortillas.

76.  Arte Sano took reasonable steps to notify Smirks within a reasonable time that the cashew flour was not suitable. The foreign material was discovered on April 27 and 28, 2020, and Arte Sano notified Smirks of the contamination in May 2020.

77.  Arte Sano suffered injuries, damages, and losses as a result of the contamination at issue, including the monetary and reputational cost of a

nationwide Class II recall of 7,260 cases (38,115 lbs) of finished cashew flour tortillas via recall number F-0959-2020.

78. The failure of the cashew flour to be suitable was a substantial factor in causing Arte Sano's harm.

### SEVENTH CLAIM FOR RELIEF

(Breach of Implied Warranty of Fitness for

Particular Purpose against Defendant Olam)

79. The allegations of paragraphs 1 through 29 are included herein.

80. On or about October 23, 2019, Arte Sano and Smirks entered into a contract for the sale of 35,000 pounds of uncontaminated cashew flour for a total price of $116,550 (Purchase Order No. 1181 and Smirks Sales Order No. 48311).

81. Upon information and belief, Smirks entered into a sales contract with Olam for the sale and purchase of cashew flour.

82. Olam fulfilled the cashew flour order for Arte Sano by way of Smirks, the intermediary for same.

83. Olam knew or should have known that its raw food products would ultimately be used by the final customer to make food products such as tortillas.

84. Therefore, at the time of purchase, Olam also knew or had reason to know that Arte Sano intended to use the cashew flour for a particular purpose – to produce tortillas.

85. At the time of purchase, Olam knew or had reason to know that Arte Sano was relying on Olam's skill and judgment to furnish cashew flour that was suitable for the particular purpose of producing tortillas.

86. Arte Sano justifiably relied on Olam's skill and judgement.

87. As alleged herein, the cashew flour provided to Arte Sano by Olam was contaminated and therefore not suitable for the particular purpose of producing tortillas.

/ / /

88. Arte Sano took reasonable steps to notify Olam within a reasonable time that the cashew flour was not suitable. The foreign material was discovered on April 27 and 28, 2020, and Olam was notified of the contamination in May 2020.

89. Arte Sano suffered injuries, damages, and losses as a result of the contamination at issue, including the monetary and reputational cost of a nationwide Class II recall of 7,260 cases (38,115 lbs) of finished cashew flour tortillas via recall number F-0959-2020.

90. The failure of the cashew flour to be suitable was a substantial factor in causing Arte Sano's harm.

## EIGHTH CLAIM FOR RELIEF

(Negligence against all Defendants)

91. The allegations of paragraphs 1 through 29 are included herein.

92. Defendants manufactured, supplied, and/or inspected the cashew flour that was provided to Arte Sano.

93. Defendants were negligent in manufacturing, supplying, and/or inspecting the cashew flour that was provided to Arte Sano.

94. Arte Sano suffered injuries, damages, and losses as a result of the contamination at issue, including the monetary and reputational cost of a nationwide Class II recall of 7,260 cases (38,115 lbs) of finished cashew flour tortillas via recall number F-0959-2020.

95. Defendants' negligence was a substantial factor in causing Arte Sano's harm.

## NINTH CLAIM FOR RELIEF

(Violations of CA Bus. & Prof. Code §17200, *et seq*. against all Defendants)

96. The allegations of paragraphs 1 through 29 are included herein.

97. Defendants have violated the Unfair Competition Law ("UCL"), Business and Professions Code §17200, et seq., by committing unlawful, unfair, or

fraudulent business acts and practices. These acts or practices include, but are not limited to, the following:

    a. failure to securely protect food from foreign or injurious contamination, in violation of Calif. Health & Safety Code §111965(a), *et seq.*, also known as the California Food Sanitation Act;

    b. producing, distributing, delivering, proffering for delivery, and/or selling food that is adulterated and containing deleterious substances that render it injurious to the health of man or any other animal that may consume it, in violation of Calif. Health & Safety Code §§ 110545, 110565, 110585, 110620, 110625, and 110630;

    c. failure to identify and implement preventive controls to provide assurances that food will not be adulterated, in violation of the FDA Food Safety Modernization Act (21 U.S.C. 301 *et seq.*);

    d. failure to establish and follow procedures to ensure that food is prevented from entering into commerce if Defendants cannot ensure that the affected food is not adulterated, in violation of the FDA Food Safety Modernization Act (21 U.S.C. 301 *et seq.*); and

    e. producing, distributing, and/or selling food that is adulterated, in violation of the FDA Food Safety Modernization Act (21 U.S.C. 301 *et seq.*).

    98. Defendants' acts and practices as alleged herein are unlawful, unfair, or fraudulent because the utility of the conduct is outweighed by the gravity of the harm it causes and because if offends established public policy or is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers and the general public. Defendants' wrongful conduct includes violation of numerous food safety and consumer laws as alleged herein or violates the spirit of these laws or otherwise significantly threatens or harms consumers and the general public.

Defendants' wrongful conduct causes or is likely to cause substantial injury to consumers and the general public, which is not reasonably avoidable by consumers and the general public themselves and is not outweighed by countervailing benefits to consumers and the general public or to competition.

99. Pursuant to the UCL, Plaintiff is entitled to disgorgement and restitution of Defendants' revenues and profits associated with their unfair competition, or such portion of those revenues and profits as the Court may find equitable.

## TENTH CLAIM FOR RELIEF

(Restitution Based on Quasi-Contract (Unjust Enrichment) against Olam)

100. The allegations of paragraphs 1 through 29 are included herein.

101. Arte Sano claims that Olam must restore to it the money that Olam received from Smirks for the cashew flour provided to Arte Sano.

102. As the manufacturer of the contaminated cashew flour, Olam knew or had reason to know that Smirks was selling contaminated product to Arte Sano.

103. Olam has been unjustly enriched at the expense of Arte Sano.

104. Arte Sano is therefore entitled to restitution of the money that Olam received from Smirks for the cashew flour provided to Arte Sano.

## PRAYER FOR RELIEF

WHEREFORE, BERKLEY ASSURANCE COMPANY, Individually and as Subrogee on behalf of ARTE SANO, LLC, respectfully requests this Court to enter judgment in its favor against Defendants and grant the following relief:

1. Compensatory damages in an amount to be determined at trial;

2. Prejudgment interest in an amount to be determined at trial;

3. An award of restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff as a result of their unlawful, unfair, and/or fraudulent business practices described herein;

/ / /

4. Recovery of Plaintiff's costs of suit therein, including attorneys' fees and costs of investigation; and

5. Such other and further relief as the Court may deem necessary or appropriate.

Dated: July 20, 2022                        BUCHALTER, A Professional Corporation

By: */s/ Robin H. Jung*
ANNE MARIE ELLIS
ROBIN H. JUNG
ROBERT B. HINCKLEY JR.
Attorneys for Plaintiff,
BERKLEY ASSURANCE COMPANY,
Individually and as Subrogee on behalf
of ARTE SANO, LLC

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated: July 20, 2022                        BUCHALTER, A Professional Corporation

By: */s/ Robin H. Jung*
ANNE MARIE ELLIS
ROBIN H. JUNG
ROBERT B. HINCKLEY JR.
Attorneys for Plaintiff,
BERKLEY ASSURANCE COMPANY,
Individually and as Subrogee on behalf
of ARTE SANO, LLC