# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKLEY ASSURANCE COMPANY, et al., | Case No. 1:22-cv-00904-ADA-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANT OLAM AMERICA'S MOTION TO DISMISS |
| v. | |
| OLAM AMERICAS, INC., et al., | (ECF Nos. 27, 40, 43, 49) |
| Defendants. | **OBJECTIONS DUE WITHIN 14 DAYS** |

## I.

## INTRODUCTION

Currently before the Court is Defendant Olam Americas, Inc.'s motion to dismiss, filed February 8, 2023. (ECF No. 40.) The Court held a hearing on the matter on June 21, 2023, at which, Plaintiffs made no appearance. Having considered the moving, opposition, and reply papers, the declarations and exhibits attached thereto, the arguments presented at oral argument, as well as the Court's record, for the reasons explained herein, the Court recommends Defendant Olam Americas, Inc.'s motion to dismiss be granted in part, without leave to amend, and denied in part.

/ / /

/ / /

/ / /

## II.

## BACKGROUND

### A.    Procedural Background

This action was filed on July 20, 2022, by Plaintiff Berkley Assurance Company ("Berkley"), individually and as subrogee on behalf of Arte Sano, LLC ("Arte Sano"), against Defendants Olam Americas, Inc. ("Olam"), and Smirk's LTD. ("Smirk's").  (ECF No. 1.)  On October 18, 2022, Olam filed a motion to dismiss set for hearing before the assigned Magistrate Judge.  (ECF No. 14.)[1]  On November 1, 2022, Smirk's filed an answer.  (ECF No. 17.)  On December 6, 2022, Olam filed a motion for more definite statement.  (ECF No. 22.)  Following extensions of time to oppose the motion for more definite statement, on December 27, 2022, Plaintiffs Berkley, individually and as subrogee on behalf of Arte Sano, and Arte Sano as a separate named Plaintiff, filed a first amended complaint ("FAC").  (ECF No. 27.)

Following stipulated extensions, the Court held a hearing on both motions on January 11, 2023.  (ECF Nos. 21, 23, 30.)  Robert Hinckley and Robin Jung appeared on behalf of Plaintiffs, and John Flock appeared on behalf of Defendant Smirk's.  (ECF No. 30.)  Smirk's did not join in the motions.  No appearance was made on behalf of the movant Defendant Olam.  On that same date, the Magistrate Judge issued findings and recommendations, recommending that the motions be deemed withdrawn pursuant to Local Rule 230(i) for the failure of the movant to appear at the hearing.  (ECF No. 33.)  The findings and recommendations also directed the Clerk of the Court to randomly assign a District Judge to this action, and District Judge Ana de Alba was assigned to the case.  As explained in the findings and recommendations, given the interplay between the two motions, and the first amended complaint filed in the interim period, it was unclear whether the motions were moot, and whether the first amended complaint was properly filed without a stipulation or granting of leave.  (ECF No. 33 at 2-5.)

After objections were filed, on February 8, 2023, and while the recommendation was still

---

[1]  Following amendment of the Local Rules effective March 1, 2022, a certain percentage of civil cases shall be directly assigned to a United States Magistrate Judge only, with consent or declination of consent forms due within 90 days from the date of filing of the action.  L.R. App. A(m)(1).  This action was initially directly assigned to a United States Magistrate Judge only.

1  pending, Defendant Olam refiled its motion to dismiss as applied to the first amended complaint.

2  (Def. Olam's Mot. Dismiss ("Mot"), ECF No. 40.)  On February 9, 2023, the District Judge

3  referred the new motion to dismiss to the assigned Magistrate Judge for the preparation of

4  findings and recommendations and/or other appropriate action.  (ECF No. 41.)

5      On February 22, 2023, Plaintiffs Berkley and Arte Sano filed an opposition to the motion

6  to dismiss.  (Pl. Berkley's Opp'n Mot. ("Opp'n"), ECF No. 43.)  On March 2, 2023, Defendant

7  Smirk's filed an answer to the FAC.  (ECF No. 48.)  On March 6, 2023, Defendant Olam filed a

8  reply brief.  (Def. Olam's Reply ("Reply"), ECF No. 49.)

9      Given the January 11, 2023, findings and recommendations were still pending, the Court

10 continued the hearing on the motion to dismiss multiple times, until setting the hearing for June

11 21, 2023.  (ECF Nos. 50, 51, 52.)  On June 8, 2023, the District Judge adopted the findings and

12 recommendations in full; withdrew Olam's motion to dismiss filed October 18, 2022, (ECF No.

13 14), and motion for joinder or more definite statement filed December 6, 2022, (ECF No. 22);

14 deemed the FAC filed December 27, 2022, (ECF No. 27), the operative complaint in this action;

15 deemed Defendant Olam's motion to dismiss filed February 8, 2023, (ECF No. 40), timely as

16 applied to the FAC; and with respect to the February 8, 2023, motion to dismiss, (ECF No. 40),

17 specified that findings and recommendations and/or other appropriate action would issue from

18 the assigned Magistrate Judge, pursuant to the Court's February 9, 2023, referral of the matter.

19 (ECF No. 54.)

20     The Court held a hearing on the motion on June 21, 2023.  (ECF No. 55.)  No counsel

21 appeared on behalf of Plaintiffs.  Michael Irving appeared on behalf of Defendant and Movant

22 Olam.  Heather McKeon specially appeared for John Flock on behalf of Defendant Smirk's.[2]

23     **B.      Factual Allegations and Causes of Action in First Amended Complaint**

24     Arte Sano uses alternative flours to manufacture grain free tortillas and chips for one

25 customer, Siete Foods.  (FAC ¶ 7.)  Arte Sano's cashew flour tortillas were manufactured using

26 cashew flour produced by Olam.  (Id.)  Olam is a supplier of various agriculture products and

---

27 [2]  At the conclusion of the hearing, at the request of the parties regarding consent to a magistrate judge for all

28 purposes, the Court advised the parties that it would wait one week to issue this recommendation in case any other
parties that had not filed consent or declination of consent forms, wished to do so.

food ingredients, including cashew flour.  (FAC ¶ 8.)  Olam received raw cashews from Vietnam and processed such raw cashews into cashew flour using Olam's facilities in California.  (Id.) Smirk's imports various food ingredients for the baking, snack food, and grocery industries, and imported the cashew product at issue and acted as a liaison between Olam and Arte Sano.  (FAC ¶ 9.)

On October 23, 2019, Arte Sano submitted a purchase order (P.O. No. 1181) to Smirk's seeking 35,000 pounds of cashew flour for a total price of $116,550.  (FAC ¶ 10)  Smirk's confirmed the sale to Arte Sano in writing noting the Arte Sano P.O. No. 1181 and Smirk's sales order number 48311 ("S.O. No. 48311").  (FAC ¶ 11.)  Upon information and belief, Smirk's, in turn, entered into a sales contract with Olam for the sale and purchase of cashew flour.  (FAC ¶ 12.)

Olam fulfilled the cashew flour order for Arte Sano by way of Smirk's, the intermediary for the same, and Olam used raw cashews to manufacture the cashew flour ordered.  (FAC ¶ 13.) On November 18, 2019, Smirk's issued a Certificate of Analysis approving "Product: Cashew Nut F1" bearing lot number 6600023175/1, as produced on November 11, 2019.  (FAC ¶ 14.) The Certificate of Analysis was approved and signed by Levi Drew, a Quality Assurance Specialist at Smirk's.  (Id.)[3]

Thereafter, Arte Sano received lot number 6600023175/1 of Olam's cashew flour.  (FAC ¶ 15.)  Arte Sano paid Smirk's in full for receipt of lot number 6600023175/1 of Olam's cashew flour.  (FAC ¶ 16.)

On April 27, 2020, Arte Sano discovered a piece of metal wire during a mid-production visual inspection of cashew flour tortillas.  (FAC ¶ 17.)  The next day, Arte Sano discovered a second piece of metal wire in finished goods on the same production line.  (FAC ¶ 18.) Additional visual inspections of finished goods from April 27 and April 28, 2020, yielded twenty (20) pieces of metal wire in total.  (FAC ¶ 19.)  Cashew flour tortillas were the only products affected by the contamination.  (Id.)

---

[3]  The Court notes that while the complaint proffers the purchase order was attached as Exhibit A to the complaint, and the certificate of analysis was attached as Exhibit B, no exhibits were attached to the filed FAC.

The cashew flour used on April 27 and April 28, 2020, corresponded to a single lot: number 6600023175/1.  (FAC ¶ 20.)  Cashew flour is an ingredient unique to Arte Sano's cashew flour tortillas.  (FAC ¶ 21.)

On May 13, 2020, a customer complaint reported identification of a wire fragment in cashew flour tortillas produced on March 2, 2020.  (FAC ¶ 22.)  The same single lot of cashew flour was used to produce cashew flour tortillas on March 2, 2020: lot number 6600023175/1.  (Id.)  On May 15, 2020, Arte Sano initiated a nationwide Class II recall of 7,260 cases (38,115 lbs.) of finished cashew flour tortillas via recall number F-0959-2020.  (FAC ¶ 23.)  Between May 2020 and December 2020, Arte Sano investigated the cause of the contamination through the use of third parties and all information obtained during the course of such investigations continued to indicate lot number 6600023175/1 was the source of the contamination.  (FAC ¶ 24.)

On or about March 22, 2022, Arte Sano, through counsel and at the direct request of representatives from both Olam and Smirk's, received final confirmation from a third-party investigator that cashew flour lot number 6600023175/1 was the source of the contamination for both the contaminated finished cashew flour tortillas as well as the contaminated sealed, unopened boxes of cashew flour from Olam.  (FAC ¶ 25.)  Specifically, and by way of example: several bronze wire fragments were found within sealed, unopened boxes of cashew flour lot number 6600023175/1 from Olam; SEM/EDS analysis of the wire fragments in the finished tortillas was consistent was with the wire fragments found within the sealed, unopened boxes of cashew flour lot number 6600023175/1; bronze wire is not present in Arte Sano's production facility; and no evidence was found to suggest that other ingredients or the environment contributed to this contamination event.  (Id.)

Arte Sano suffered injuries, damages, and losses as a result of the contamination at issue that total at least $380,000.  (FAC ¶ 26.)  Arte Sano maintained an insurance policy with Berkley that was in effect at all times relevant to Arte Sano's claims against Defendants in this case.  (FAC ¶ 27.)

After discovering the above-mentioned product contamination issues, Arte Sano initiated

1   a claim with Berkley for the injuries, damages, and losses Arte Sano incurred as a result of

2   Defendants' actions or inactions contributing to and/or causing the contamination at issue.  (FAC

3   ¶ 28.)  Berkley made payments to Arte Sano in the amount of $211,394, pursuant to the effective

4   insurance policy and as a result, Berkley retains an interest as subrogee in this action.  (FAC ¶

5   29.)  Arte Sano likewise seeks to recover damages that total at least $168,888, that Arte Sano

6   sustained directly and that were not covered by the effective insurance policy.  (FAC ¶ 30.)

7         Plaintiffs bring the following causes of action in the first amended complaint: (1) breach

8   of contract against Defendant Smirk's; (2) breach of contract (third party beneficiary) against

9   Defendant Olam; (3) breach of implied duty to perform with reasonable care against Defendant

10  Smirk's; (4) breach of implied warranty of merchantability against Defendant Smirk's; (5)

11  breach of implied warranty of merchantability against Defendant Olam; (6) breach of implied

12  warranty of fitness for particular purpose against Defendant Smirk's; (7) breach of implied

13  warranty of fitness for particular purpose against Defendant Olam; (8) negligence against all

14  Defendants; (9) violation of California Business and Professions Code § 17200, *et seq.*, against

15  all Defendants; and (10) restitution based on quasi-contract (unjust enrichment) against

16  Defendant Olam.

17                                    **III.**

18                            **LEGAL STANDARD**

19        Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

20  the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A

21  motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Navarro

22  v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss, "[a]ll allegations

23  of material fact are taken as true and construed in the light most favorable to the nonmoving

24  party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  The pleading

25  standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual

26  allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

27  accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

28  Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-

1    pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-79.  However,

2    "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

3    statements, do not suffice."  Id. at 678.  To avoid a dismissal under Rule 12(b)(6), a complaint

4    must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550

5    U.S. at 570.

6        In deciding whether a complaint states a claim, the Ninth Circuit has found that two

7    principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint

8    "may not simply recite the elements of a cause of action, but must contain sufficient allegations

9    of underlying facts to give fair notice and to enable the opposing party to defend itself

10   effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair

11   to require the defendant to be subjected to the expenses associated with discovery and continued

12   litigation, the factual allegations of the complaint, which are taken as true, must plausibly

13   suggest an entitlement to relief.  Starr, 652 F.3d at 1216.  "Dismissal is proper only where there

14   is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable

15   legal theory."  Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696,

16   699 (9th Cir.1988)).

17       Courts freely grant leave to amend a complaint which has been dismissed.  See Fed. R.

18   Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.");  Schreiber

19   Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is

20   dismissed for failure to state a claim, leave to amend should be granted unless the court

21   determines that the allegation of other facts consistent with the challenged pleading could not

22   possibly cure the deficiency.");  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (same).

23                                        **IV.**

24                                    **DISCUSSION**

25   **A.      Preliminary Arguments Regarding Previous Motion to Dismiss and Court's
             Recommendation of Withdrawal for Nonappearance**

26

27       In opposition, Plaintiffs first argue that because of the recommendation for withdrawal of

28   the previous motion to dismiss for nonappearance by Olam, still pending at the time of briefing

1  (ECF No. 33), and because the FAC is substantively identical to the original complaint, the Court

2  should deny the current motion to dismiss.  (Opp'n 3.)

3       On June 8, 2023, the District Judge adopted the pending recommendation, and as relevant

4  to this preliminary issue, stated: "the Court acknowledges the failure to appear was due to a

5  mistake by counsel that was quickly addressed . . . the Court finds no reason to deviate from the

6  recommendation that the motions be withdrawn for nonappearance, given the Magistrate Judge

7  did not recommend that withdrawal be with prejudice against the ability to file a motion to

8  dismiss the first amended complaint . . . [and] [i]f the recommendations were implemented the

9  day the recommendations issued, Defendant Olam would still have been within its right to file a

10  responsive pleading to the first amended complaint, as the findings and recommendations issued

11  within twenty-one days of the filing of the first amended complaint."  (ECF No. 54 at 3.)  The

12  order adopting also ordered Defendant's refiled motion to dismiss be deemed timely as applied

13  to the first amended complaint, and indicated the Magistrate Judge is to issue findings and

14  recommendations or take other appropriate action as to the motion to dismiss, as referred on

15  February 9, 2023.  (ECF No. 54 at 4-5.)  Therefore, the Court finds it appropriate, given the

16  Court did not adjudicate the merits of the previous motion to dismiss, to now proceed to make

17  findings and recommendations as to the merits of the motion to dismiss as refiled in relation to

18  the operative first amended complaint.

19  **B.  The Court Recommends Granting Defendant's Motion to Dismiss the Second**
20  **Cause of Action for Breach of Contract (Third Party Beneficiary)**

21       Defendant Olam moves to dismiss Plaintiffs' second cause of action for breach of

22  contract (third party beneficiary).  The second cause of action is brought only against Defendant

23  Olam.

24       As the parties discuss, the California Supreme Court recently clarified the meaning of

25  terms applicable to the third party beneficiary doctrine under California law:

26          With regard to the second element, we note that our past cases
          have sometimes referred to this element of the third party
27          beneficiary doctrine as a requirement that the "purpose" of the
          contract be to benefit the third party (see, e.g., *Lucas v.
28          *Hamm*, *supra*, 56 Cal.2d at pp. 589-590, 15 Cal.Rptr. 821, 364

> P.2d 685) and sometimes as a requirement that there be "an intent to benefit" the third party [citations] . . . Because of the ambiguous and potentially confusing nature of the term "intent" (see *Eisenberg*, *supra*, 92 Colum. L.Rev. at p. 1378), this opinion uses the term "motivating purpose" in its iteration of this element to clarify that the contracting parties must have a motivating purpose to benefit the third party, and not simply knowledge that a benefit to the third party may follow from the contract. To avoid any possible confusion, however, we emphasize that our intent-to-benefit case law remains pertinent in applying this element of the third party beneficiary doctrine.

Goonewardene v. ADP, LLC, 6 Cal. 5th 817, 830, 434 P.3d 124, 133 (2019).   Thus, the contracting parties must have a "motivating purpose to benefit the third party, and not simply knowledge that a benefit . . . may follow." Id.

As Defendant highlights, Plaintiffs state the precondition for successful invocation of third-party beneficiary standing in the complaint, where Plaintiffs allege: "Arte Sano was not a party to the sales contract between Smirks and Olam[,] [h]owever, upon information and belief, a motivating purpose of Smirks and Olam was for Arte Sano to benefit from their contract, and Smirks and Olam intended for Arte Sano to benefit from their contract." (FAC ¶ 43.) Defendant argues however, "Olam and Smirk[']s, in Paragraphs 11.8 and 11.9 of the 'General Sales & Delivery Terms' of their contract, expressly *disclaimed* any such motivating purpose." (Mot. 4 (emphasis in original).)   While Defendant incorrectly refers to Sections 11.8 and 11.9,[4]

---

[4]   Section 11.8 only provides that "[n]o purported variation of these Terms and/or the terms in the Sales Order Confirmation shall be effective unless made in writing signed by the parties," and there does not appear to be a Section 11.9 in the attached contract. (See ECF No. 40 at 12.)  Further, Defendant uses both "Sections" and "Paragraphs" in briefing, and the Court shall use the term "Section" when referring to the contract.

The Court notes the contract as a whole at issue is the General Sales & Delivery Terms sheet (ECF No. 40 at 11-12, with the Sales Confirmation Order (ECF No. 40 at 9).  For ease of reference, the Court refers to the General Sales & Delivery Terms as the "Contract."  The Court refers separately to the "Sales Confirmation Order."  It is unclear what the omitted Exhibit A encompassed that was purported to be attached to Plaintiffs' complaint.  While no specific request for judicial notice was made, Plaintiffs did not object to the attachment of the Contract and Sales Confirmation Order, nor dispute their authenticity, and made arguments based upon them.  The Court finds it proper to consider such documents. See Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."); Augustine v. Natrol Prod., Inc., No. 3:13-CV-3129-H DHB, 2014 WL 2506284, at *2 (S.D. Cal. May 15, 2014) ("In addition, under the 'incorporation by reference' doctrine, a Court may take judicial notice if 'the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though plaintiff does not explicitly allege the contents of that document in the complaint.' " (quoting Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005))).

1   Defendant excerpts and appears to have meant to refer to Sections 11.6 and 11.7.  (Id.)  Section

2   11.6 of the General Sales & Delivery Terms (the "Contract") states:

3               These Terms and the terms in the Sales Order Confirmation have
            been made and is made solely for the benefit of the parties hereto
4            and their respective successors and permitted assigns.  Nothing
            herein is intended to confer any rights or remedies on any persons
5            other han [sic] the parties to it and their respective successors and
            permitted assigns.  Nothing herein is intended to relieve or
6            discharge the obligation or liability of any third persons to any
            party hereto.
7

8   (Mot. 4; Ex. 1, ECF No. 40 at 12.)  Section 11.7 provides that: "[a] person who is not a party

9   hereto (other than a permitted assignee to whom rights have been assigned in accordance with

10  the above ) shall have no right under the Contracts (Rights of Third Parties) Act, Chapter 53B of

11  Singapore, to enforce any of the terms herein."  (Id.)  Defendant argues that application of the

12  Goonewardene "motivating purpose" standard to the contracting parties' stated intent dictates

13  that Arte Sano and its subrogee have no third-party beneficiary rights under the Contract, and the

14  second cause of action should be dismissed.

15        Somewhat confusingly, Plaintiffs' opposition refers to Defendant's motion as an

16  opposition, and also refers to Sections 11.8 and 11.9 of the Contract, stemming from Defendant's

17  initial misstatement.  (Opp'n 3.)  While stating 11.8, Plaintiffs actually refer to Section 11.6, and

18  emphasize the clause that states "[n]othing herein is intended to relieve or discharge the

19  obligation or liability of any third persons **to** any party thereto."  (Opp'n 3 (emphasis added by

20  Plaintiffs).)  Therefore, as to third parties, Plaintiffs argue the Contract between Olam and

21  Smirk's simply states the obligations and liabilities of third parties *to* Olam is not relieved or

22  discharged, not that any motivating purpose is discharged.  (Opp'n 3-4.)  As a manufacturer who

23  supplies raw food products, such as cashew flour, to importers, Plaintiffs argue Olam knew or

24  should have known that its raw food products would ultimately be used by the final customer to

25  make food products such as tortillas.  (FAC ¶ 8).  Plaintiffs thus argue that a motivating purpose

26  of Olam was therefore for Arte Sano to benefit from the contract between Olam and Smirks.

27  (FAC ¶ 43).

28  ///

10

1      Further, while stating 11.9, Plaintiffs appear to refer to the text of Section 11.7,[5]

2    emphasizing Section 11.7 only pertains to the disclaimer of third party rights under the

3    "Contracts (Rights of Third Parties) Act, Chapter 53B of Singapore."  (Opp'n 4.)  Thus,

4    Plaintiffs argue Arte Sano does not bring any claims under the laws of Singapore, and, if Olam

5    wanted to specifically disclaim third party rights under California, or any other jurisdiction, it

6    could have specifically attempted to do so in its contract with Smirks, but did not.  In sum,

7    Plaintiffs counter that under Goonewardene, a motivating purpose of the contract between Olam

8    and Smirks must have been to have third parties use the raw cashew flour to produce food

9    products; that Olam knew Smirks is an importer and food distributor in California; therefore, the

10    contract between Olam and Smirks also "benefitted the aggrieved third party," as Arte Sano did

11    use the cashew flour to produce flour tortillas; and Arte Sano has adequately pled the second

12    cause of action.  (Opp'n 4.)

13      The Court agrees with Defendant that Plaintiffs focus on a narrow aspect of the provision

14    and do not address the implications of the other clauses in Section 11.6.  Specifically, the Court

15    finds the plain reading of Section 11.6 demonstrates it has two operative effects.  First it

16    disclaims any intent to create third-party beneficiaries in stating "[t]hese Terms and the terms in

17    the Sales Order Confirmation have been made and is made solely for the benefit of the parties

18    hereto and their respective successors and permitted assigns [and] [n]othing herein is intended to

19    confer any rights or remedies on any persons other [t]han the parties to it and their respective

20    successors and permitted assigns."  (ECF No. 40 at 12.)  Then the last sentence of Section 11.6

21    provides "[n]othing herein is intended to relieve or discharge the obligation or liability of any

22    third persons to any party hereto," with the parties "hereto" being Olam and Smirk's.

23

24    [5]  To add to the confusion, in reply, Defendant then ponders that "[w]e do not see a Section 11.9 . . . Plaintiffs
appear to be referring to Section 11.1." (Reply 6.)  Section 11.1 provides that "[u]nless provision for arbitration is
provided in the Sales Order Confirmation, these Terms and terms in the Sales Order Confirmation are governed by

25    and are to be construed in accordance with the laws of the Singapore and the Purchaser hereby submits to the non-
exclusive jurisdiction of the Singapore courts." (See ECF No. 40 at 12.)  As to Section 11.1, Defendant argues that

26    there is in fact an arbitration provision the Olam to Smirk's sales order, and therefore under Section 11.1, the
applicability of Singapore law is not triggered, and since Arte Sano and its subrogee, Berkley, were not signatories

27    to the Olam/Smirk's contract, they would not be bound by the arbitration clause.  The Court believes the Plaintiffs
were referring to Section 11.7, not Section 11.1, and indeed Plaintiffs directly quote Section 11.7, in response to

28    Defendant's citation to the provision.  Both provisions are relevant as related, however, as discussed herein.

The Court finds in accord with Defendant's interpretation that the first term forestalls the creation of third-party rights *by* the contracting parties, the second denies that any duties owed by third parties *to* the contracting parties are impaired, and that the contracting parties' preservation of their *existing* rights vis-à-vis third parties (whatever those rights might be) in no way undermines their decision to avoid *creating* rights that some third party might want to enforce against them. "If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs." Balsam v. Tucows Inc., 627 F.3d 1158, 1162 (9th Cir. 2010) (quoting Cal. Civ. Code § 1638). As Defendant notes, California and Ninth Circuit law is clear that contracting parties are free to disclaim third-party beneficiary rights. See Balsam, 627 F.3d at 1162 ("Given the absence of any evidence to the contrary, we conclude that the "No Third Party Beneficiaries" clause unambiguously manifests an intent *not* to create any obligations to third parties through the RAA."); Pegasus Satellite Television, Inc. v. DirecTV, Inc., 318 F. Supp. 2d 968, 977 (C.D. Cal. 2004) ("Although it is not necessary that the contract identify or refer to the third-party beneficiary by name, the Court has not found any authority that would allow it to abrogate an express no third-party beneficiary provision in direct contravention of the mandate of California Civil Code section 1559.").

Defendant next turns to Plaintiffs' assertion that Defendant Olam, as a manufacturer of cashew flour, could foresee that a downstream customer of wholesaler Smirk's would be using that flour to make food products, tortillas, in this case. Defendant states this is an uncontroversial assumption, however, argue Plaintiffs impermissibly take the assumption to a further and untenable step in arguing argue that such foreseeability in and of itself creates third-party beneficiary rights in the downstream customer.

The Court agrees that Plaintiffs' argument is not supported by the law. In Goonewardene, the putative third-party beneficiary was an employee of Altour International, Inc., which had contracted with ADP to process payroll for its employees. Goonewardene, 6 Cal.5th at 823-26. Altour's employee was not in contractual privity with ADP, but nevertheless was aggrieved by ADP's alleged mishandling of the Altour payroll and the employee sued both Altour and ADP. See id. Defendant Olam argues in Goonewardene, Altour and ADP could

1    have foreseen a benefit to the Altour employee in having their payroll processed properly, and in

2    the present case, Olam and Smirk's could have foreseen a benefit to Arte Sano in receiving

3    properly manufactured cashew flour, however, in neither case was there an intent by the

4    contracting parties to confer upon the third party a right to sue on the contract.  As the California

5    Supreme Court explained:

> Moreover, even if a motivating purpose of such a contract were to
> provide a benefit to employees with regard to wages they receive,
> it still would not follow that the employees would be entitled to sue
> the payroll company for breach of contract under the third party
> beneficiary doctrine.  As this court's decision in *Socoma
> Companies*, *supra*, 11 Cal.3d at pages 401-402, 113 Cal.Rptr. 585,
> 521 P.2d 841, teaches, even if a motivating purpose of the
> contracting parties is to provide a benefit to the employees, it still
> may be inconsistent with the objectives of the contract and the
> reasonable expectations of the contracting parties to permit the
> employees to sue the payroll company for an alleged breach of the
> contract. (See Geis, *Broadcast Contracting* (2012) 106 Nw.U.
> L.Rev. 1153, 1195 ["There is an important analytical distinction
> between contracting for a benefit to an outsider and granting a
> right to sue for breach to that outsider"].)

14   Goonewardene, 6 Cal. 5th at 835–36.

15        In any event, even if the Court were to accept Plaintiffs' argument that foreseeability

16   generally can create third party beneficiary rights, the Court would find the intent of the parties

17   as demonstrated by the plain meaning of the Contract provision Section 11.6 would override any

18   such creation of third-party beneficiary rights in this case flowing from the Plaintiffs'

19   foreseeability argument.

20        The Court now turn to the parties' arguments concerning arbitration, and references to

21   Singapore law in the Contract.  As noted above, there was some confusion as to the parties'

22   citations to Sections 11.7 and 11.1.  Again, it appears Plaintiff were intending to refer to Section

23   11.7, as noted above.  However it appears both provisions are relevant.  Again, Section 11.1

24   provides that "[u]nless provision for arbitration is provided in the Sales Order Confirmation,

25   these Terms and terms in the Sales Order Confirmation are governed by and are to be construed

26   in accordance with the laws of the Singapore and the Purchaser hereby submits to the non-

27   exclusive jurisdiction of the Singapore courts."  (ECF No. 40 at 12.)  Section 11.7 provides that:

28   "[a] person who is not a party hereto (other than a permitted assignee to whom rights have been

1  assigned in accordance with the above ) shall have no right under the Contracts (Rights of Third

2  Parties) Act, Chapter 53B of Singapore, to enforce any of the terms herein." (Id.)

3      The Court finds Section 11.7 provides additional support to the Court's finding there was

4  no intent to create third party beneficiaries under the contract.  In essence, Section 11.6 generally

5  expresses the intent that the contract have no third party beneficiaries, and Section 11.7 makes it

6  additionally clear that under Singapore Law (which would apply if there was no arbitration

7  provision), the parties additionally expressly agreed that no third parties would have any rights

8  under that provision of Singapore Law.

9      As Defendant argues, there *is* in fact an arbitration provision in the Sales Confirmation

10 Order.  (See ECF No. 40 at 9 ("ANY CONTROVERSY OR CLAIM ARISING OUT OF THIS

11 CONTRACT MAY BE SETTLED IN BINDING ARBITRATION BY THE ASSOCIATION

12 OF FOOD INDUSTRIES, INC OF NEW YORK IN ACCORDANCE WITH ITS RULES.").)

13 Although it doesn't appear to be Plaintiffs' precise argument, the Court does agree with

14 Defendant that Singapore law would not apply, and also agrees that Arte Sano and its subrogee,

15 Berkley, were not signatories to the Olam/Smirk's contract, so they are not bound by the

16 arbitration clause.

17     However, even assuming that Singapore law does apply (because of the arbitration

18 provision or otherwise), the Court also agrees with Defendant that it appears Singapore Law

19 would favor Defendant's position, as it is similar to California and Ninth Circuit law in ultimate

20 effect.  The Singapore Contracts (Rights of Third Parties) Act 20013 provides in relevant part:

21         Right of third party to enforce contractual term

22         2.—(1)  Subject to the provisions of this Act, a person who is not a
           party to a contract (called in this Act a third party) may, in the third
23         party's own right, enforce a term of the contract if —
           (a)     the contract expressly provides that the third party may; or
24         (b)     subject to subsection (2), the term purports to confer a
           benefit on the third party.
25         (2)  Subsection (1)(b) does not apply if, on a proper construction of
           the contract, it appears that the parties did not intend the term to be
26         enforceable by the third party.
           (3)  The third party must be expressly identified in the contract by
27         name, as a member of a class or as answering a particular
           description, but need not be in existence when the contract is
28         entered into.

(4)  This section does not confer a right on a third party to enforce a term of a contract otherwise than subject to and in accordance with any other relevant terms of the contract.

(available at https://sso.agc.gov.sg/Act/CRTPA2001, last accessed June 14, 2023).  Thus, under Subsection (1)(a), there would need to be an express provision to the third party.  Further, if the term confers a benefit under (1)(b), (1)(b) would not apply if the contract's terms demonstrate the parties did not intend the term to be enforceable by the third party, which for the reasons explained above, the Court finds in favor of Defendant as to the plain meaning of the Contract, including the Singapore provisions.  And finally, under Subsection (3), the third party would need to be expressly identified.

Accordingly, for all of the above reasons, the Court recommends granting Defendant Olam's motion to dismiss Plaintiffs' second cause of action.  Given what appears to be the plain meaning of the Contract, the Court intended to inquire at the hearing on this motion from Plaintiffs as to whether there are any additional facts that could be pled that could demonstrate an intent to benefit third party beneficiaries, in light of the authorities above.  Plaintiffs did not appear for the June 21 hearing on his matter, did not submit a notice of intent to submit the matter on the briefs, nor contact the Court after the hearing.

The Court has the discretion to deem the opposition to the instant motion withdrawn.  See L.R. 230(i) ("Absent notice of intent to submit the matter on the briefs, failure to appear may be deemed withdrawal of the motion or of opposition to the motion, in the discretion of the Court, or may result in the imposition of sanctions.").  Indeed, the Court considered whether it would be the proper and fair measure given the previous recommendation to withdraw the first filed motion to dismiss for the movant Defendant Olam's nonappearance, discussed above.[6] However, in the case of the first motion to dismiss, the party failing to appear was the movant, and the concern the Court wished to raise at the hearing was whether the motions should be deemed

---

[6]  In fact, it should be highlighted, somewhat ironically, that as discussed above, in the filed opposition, Plaintiffs first argued that because of the recommendation for withdrawal of the previous motion to dismiss for nonappearance by Olam, the Court should deny the current motion to dismiss outright.  (Opp'n 3.)  The Court concludes that allowing the Defendant's motion to proceed on the merits, and allowing Plaintiff's opposition to be considered, is appropriate.  In other words, what is "good for the goose is good for the gander."

1  moot with the filing of the amended complaint, and the recommendation did not recommend the

2  withdrawal be with prejudice to a renewed motion directed at the amended complaint.  In other

3  words, the recommendation was directed at cleaning up the procedural posture of the action, and

4  the Court issued recommendations based on the record of nonappearance, and also suggested

5  therein that the parties could simply stipulate to deeming the amended complaint the operative

6  complaint, and withdrawing the motions.  (See ECF No. 33 at 4.)  The Court sees the

7  circumstances and procedural posture different here.  The motion to dismiss has been referred for

8  findings and recommendations, and the Court has the substantive arguments fully briefed, and

9  there are no concerns relating to whether the case is in the procedural posture to proceed to the

10  merits of the motion.  Additionally, the hearing on the motion was continued three times.  Given

11  the pleadings have been pending for some time now based on the same substantive challenges,

12  the Court proceeds to analyze and provide a recommendation on the matter, to the District Judge,

13  based on the referral of the matter.  Of course, the District Judge may still find it appropriate to

14  consider the opposition withdrawn.

15      Based on the first amended complaint, the briefing, and the contractual terms, the Court

16  finds there are no additional facts that could be pled that would possibly cure the deficiency.  See

17  Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); Lopez,

18  203 F.3d at 1130.  If Plaintiffs believe amendment is viable, Plaintiff may choose to address

19  leave to amend in any filed objections, however, given the nonappearance at the hearing, the

20  Court considers the issue essentially rested on the briefs and sees no basis within the terms of the

21  Contract for Plaintiff to plead additional facts that would save the second cause of action from

22  Defendant's motion to dismiss.[7]

23  / / /

24

---

[7] While the Court finds the nonappearance weighs in favor of finding there are no additional facts that could be pled
25  as to this cause of action, the Court highlights, as noted multiple times below, that the Court considers arguments on
behalf of Plaintiffs, that Plaintiffs did not even raise in their opposition brief, despite the Plaintiffs' nonappearance at
26  the hearing, and the Court's intention to raise such issues at the hearing.  The Court leaves it to Defendant to submit
arguments in objections as to whether Plaintiffs have waived any issues that are the subject of this findings and
27  recommendations; whether Plaintiffs have waived any direct ability to address certain issues in objections; and
ultimately to the District Judge whether any issues raised in opposition were waived or whether objections are
28  validly raised to the finding concerning leave to amend or others.

**C.    The Court Recommends Denying Defendant's Motion to Dismiss Plaintiffs' Fifth Claim for Relief (Breach of Implied Warranty of Merchantability) and Seventh Claim for Relief (Breach of Implied Warranty of Fitness for Particular Purpose)**

Defendant moves to dismiss Plaintiffs' fifth cause of action for breach of implied warranty of merchantability, and moves to dismiss Plaintiffs' seventh cause of action for breach of implied warranty of fitness for a particular purpose.  The arguments submitted by Defendant are the same as to both these causes of action.  (See Mot. 5-7.)  Defendant submits that Olam and Smirk's explicitly excluded any implied warranties from their agreement.  (Mot. 5.)

The parties focus on Sections 6.1 and 6.4 of the Contract, and California Commercial Code § 2316.  Section 6.1, under the Contract's "General Sales and Delivery Terms," provides:

> The Company hereby warrants that the Products comply with the Specifications described in the Sales Order Confirmation.   All warranties expressly made in the Sales Order Confirmation are made to the best of the Company's knowledge but this does not release the responsibility to makes its own examinations and tests. Save as otherwise expressly set out herein or in the Sales Order Confirmation, the Company makes no other representation or warranty in respect of the Products (including but not limited to any representation or warranty relating to the price information and/or technical specifications set out in the Company's price lists and/or brochures).

(ECF No. 40 at 12.)

Section 6.4 of the Contract provides that "[n]otwithstanding anything to the contrary in the Sales Order Confirmation, the Company shall not be liable to the Purchaser or any third party by reason of any implied warranty, condition or other terms or any duty at common law unless expressly stated in the Sales Order Confirmation for any loss or damage howsoever arising out of or in connection with the supply of the products."    (Id.)   In relevant part, the California Commercial Code provides:

> (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this division on parol or extrinsic evidence (Section 2202) negation or limitation is inoperative to the extent that such construction is unreasonable.
>
> (2) Subject to subdivision (3), to exclude or modify the implied warranty of merchantability or any part of it the language must

17

1
2
3
4

mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

(3) Notwithstanding subdivision (2)

5
6
7
8

(a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

9   Cal. Com. Code § 2316(1)-(3).

10        Olam argues that to the extent Arte Sano and Berkley have standing to assert a warranty

11   claim against Olam,[8] they are limited to the assertion of express warranty claims, since Olam

12   properly excluded all implied warranty claims from the Contract.  Therefore, because Plaintiffs

13   have not pleaded an express warranty claim, Defendant Olam submits that the fifth and seventh

14   causes of action should be dismissed.

15        Plaintiffs respond that Section 6.1 states that "[t]he Company hereby warrants that the

16   Products comply with the Specifications described in the Sales Order Confirmation."  Plaintiffs

17   highlight that in Section 1 (Definitions) of the Contract, "Specifications" is defined as "the

18   quality, quantity, packing and any other specifications relating to the Products as set out in the

19   Sales Order Confirmation."  (See ECF No. 40 at 11.)  Plaintiffs argue that it is undeniable that

20   cashew flour that contains foreign metal wire or other such contaminants would not meet the

21   quality or the packing specifications of any food product, and therefore it is clear Olam breached

22   this specific warranty to provide products complying with the specifications of the sales order.

23   As for Olam's reliance on Section 6.4 as a basis to argue all implied warranties were disclaimed,

24
25
26
27
28

[8]  As Defendant proceeds under this assumption without a direct challenge, the Court presumes the exception applies to the food products in question here.  See Schwartz v. Wright Med. Tech., Inc., No. EDCV1401615JGBSPX, 2014 WL 11320637, at *5 (C.D. Cal. Sept. 11, 2014) (citations omitted) ("Under California law, privity between parties is required for a claim of breach of an implied warranty. . . [h]owever, California recognizes an exception to the privity requirement in breach of warranty claims pertaining to food or drug products.").  Additionally, Plaintiffs make no argument that this exception for food products in the implied warranty context has any direct relevance to the discussion in the previous subsection pertaining to third party beneficiaries, and whether it could apply to for example, their argument of foreseeability in the chain of use in the food product.  The Court assumes this exception does not apply to the above analysis.

1   Plaintiffs highlight the qualifying language at the end of the clause that states "unless expressly
2   stated in the Sales Order Confirmation for any loss or damage howsoever arising out of or in
3   connection with the supply of the products."  Plaintiffs further argue the language in the contract
4   between Olam and Smirk's is not sufficient under Section 2316 of the Commercial Code, to
5   disclaim all implied warranties, as first, there is no language that specifically references
6   merchantability, § 2316(2), and second, the contract language also fails to use language such as
7   "as is" or "with all faults" as referenced in § 2316(3)(a) as sample language to exclude *all*
8   implied warranties.

9        Plaintiffs also argue that given the language of Section 6.4 states Olam will not be liable
10   for any implied warranty "unless expressly stated in the Sales Order Confirmation for any loss or
11   damage howsoever arising out of or in connection with the supply of the Products," and Section
12   6.1 specifically provides an express warranty that all products will comply with the
13   specifications (being of the quality agreed upon) in the sales order, there is thus an express
14   warranty as to the quality of the cashew flour and there are naturally implied warranties that stem
15   from it.  Plaintiffs thus contend it is clear that the Contract does not exclude implied warranties
16   of merchantability and fitness for a particular purpose as to the quality of the cashew flour.

17        Defendant replies that as for Plaintiffs' argument that implied warranties flow from the
18   express warranty terms, Plaintiffs provide no authority to support its claim that an express
19   warranty entrains implied warranties in its wake, as express and implied warranties are distinct
20   causes of action.  The Court partially agrees with Defendant in that it finds Plaintiffs' arguments
21   concerning an express warranty to not be directly relevant to these causes of action as asserted
22   pertaining to the implied warranties of merchantability and fitness for a particular purpose.  As
23   Defendant highlights, the Uniform Commercial Code Comment 1 to UCC § 2-313 states, as
24   referenced in the California Commercial Code:

25            "Express" warranties rest on "dickered" aspects of the individual
              bargain and go so clearly to the essence of that bargain that words
26            of disclaimer in a form are repugnant to the basic dickered terms.
              "Implied" warranties rest so clearly on a common factual situation
27            or set of conditions that no particular language or action is
              necessary to evidence them, and they will arise in such a situation
28            unless unmistakably negated.

1   Cal. Com. Code § 2313.  As Defendant also highlights, breach of express warranty and breaches

2   of implied warranty are separate causes of action as each with  its own standard jury

3   instruction—CACI 1230 for express warranty, and CACI 3210 (merchantability) and CACI 1232

4   (fitness for a particular purpose) for implied warranties.  Defendant thus argues that because

5   Plaintiffs contend Olam breached *express* warranties, that is what they should plead.  Plaintiffs

6   do not bring a claim for breach of express warranty, and the Court makes no comment on

7   whether Plaintiffs should additionally plead a cause of action for breach of express warranty.

8          The Court finds that the presence of distinct causes of action for express and implied

9   breach of warranty claims, and other authority weigh in favor of Defendant as to this argument.

10  Such authority discusses that it may be impermissible to have conflicting statements in contracts

11  that purport to establish an express warranty, and on the other hand disclaim such express

12  warranty, however, the presence of terms specifying an express warranty does not necessarily

13  mean a waiver of implied warranties is ineffectual, if it otherwise satisfies California

14  Commercial Code § 2316(1)-(3).  See Cal. Com. Code § 2316(1) ("Words or conduct relevant to

15  the creation of an express warranty and words or conduct tending to negate or limit warranty

16  shall be construed wherever reasonable as consistent with each other."); Blue Heron Farm LLC

17  v. Norcal Nursery, Inc., No. 6:19-CV-01403-MK, 2022 WL 2612130, at *7 (D. Or. May 5,

18  2022) ("Because a disclaimer or modification is inconsistent with an express warranty, words of

19  disclaimer or modification give way to words of warranty unless some clear agreement between

20  the parties dictates the contrary relationship," and "[a]ny disclaimer or modification must be

21  strictly construed against the seller." (quoting Hauter v. Zogarts, 14 Cal. 3d 104, 119 (1975)));

22  Fundin v. Chicago Pneumatic Tool Co., 152 Cal. App. 3d 951, 958 (1984) ("Strict construction

23  against the person who has both warranted a particular fact to be true and then attempted to

24  disclaim the warranty is especially appropriate in light of the fact that [a] disclaimer of an

25  express warranty is essentially contradictory." (quoting 2 Witkin, Summary of Cal. Law (8th ed.

26  1973) Sales, § 74.); Dorman v. Int'l Harvester Co., 46 Cal. App. 3d 11, 18, 120 Cal. Rptr. 516,

27  521–22 (Ct. App. 1975) (Commercial Code "seeks to protect a buyer from Unexpected and

28  unbargained language of disclaimer by denying effect to such language when inconsistent with

language of express warranty and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise.").

The Court does not find here that the attempt to waive implied warranties has improperly disclaimed any express warranties.  See R Power Biofuels, LLC v. Chemex LLC, No. 16-CV-00716-LHK, 2016 WL 6663002, at *19 (N.D. Cal. Nov. 11, 2016) ("Plaintiff argues that the disclaimer of the implied warranty of fitness for a particular purpose is void if that disclaimer also disclaims 'the express warranty set forth in the contract[,]' . . . [however] [h]ere, there is no indication that the disclaimer of the implied warranty of fitness for a particular purpose has somehow disclaimed the express warranty provided by the Services Order." (citing Hauter, 14 Cal. 3d at 119)).

Turning to the Commercial Code's requirements for disclaiming implied warranties, Defendant counters that subdivision (2) begins with the proviso that it's "[s]ubject to subdivision (3)," subdivision (3)(a)[9] provides that a disclaimer is effective if it employs "language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty," and therefore, the language from Sections 6.1 and 6.4 excerpted above could not more plainly state that all implied warranties are disclaimed, the absence of "magic words" notwithstanding.  The Court does agree with Defendant that subdivision (3)(a) does not require the Contract to utilize the sample terms provided (i.e. "as is," or "with all faults"), but rather can use "other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty."  Cal. Com. Code § 2316(3)(a).

Here, Section 6.4 of the Contract provides that "[n]otwithstanding anything to the contrary in the Sales Order Confirmation, the Company shall not be liable to the Purchaser or any third party by reason of any implied warranty, condition or other terms or any duty at common law unless expressly stated in the Sales Order Confirmation for any loss or damage howsoever arising out of or in connection with the supply of the products."  Thus, the question is

---

[9] Defendant's reply brief incorrectly cites to subsection 3(b).  (Reply 10.)

whether this language is sufficient under Subdivision 3(a) to establish there is no implied warranty.  The Court finds the clause itself somewhat confusing in that, it first provides that notwithstanding anything to the contrary in the Sales Order Confirmation, meaning Section 6.4 would override anything in the Sales Order Confirmation to the contrary.  See Hooks v. Kitsap Tenant Support Servs., Inc., 816 F.3d 550, 559 (9th Cir. 2016); Etter v. Norcold, Inc., No. 21-55242, 2022 WL 614291, at *1 (9th Cir. Mar. 2, 2022).[10]  However, Section 6.4 ends by stating "unless expressly stated in the Sales Order Confirmation," and thus despite the term notwithstanding, it appears the Sales Order Confirmation *could* override Section 6.4.  Additionally, the Court notes that Sales Order Confirmation appears to specify that the Sales Order Confirmation overrides the General Sales and Delivery Terms in the contract.  The Sales Order Confirmation provides that "[i]n addition to the above terms, Olam's General Sales & Delivery Terms[]will also apply," and that "[t]he order of applicability of terms will be as follows:"

> 1. As specified in the contract (above).
> 2. Whatever is not specified in the terms above is as per terms of the Arbitration body mentioned in the contract.
> 3. Any points not covered by above two points are covered as per Olam's General Sales & Delivery Terms.
> 4. In case of conflict in the terms, the order of priority are terms agreed above, followed by AFI and then Olam's General Sales &

---

[10]  As the Ninth Circuit explained as to the term notwithstanding:

> This argument is in tension, however, with the ordinary meaning of the word "notwithstanding." *See Sandifer v. U.S. Steel Corp.,* ──── U.S. ────, 134 S.Ct. 870, 876, 187 L.Ed.2d 729 (2014) ( "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning" (quoting *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979))).  The word "notwithstanding" means "in spite of." Oxford English Dictionary,
> http://www.oed.com/view/Entry/128667?redirectedFrom=notwithstanding# eid;
> *see also* Merriam–Webster, http://www.merriam-webster.com/dictionary/notwithstanding (defining "notwithstanding" as "despite" or "without being prevented by").  Consistent with this definition, as well as Supreme Court guidance, we have explained that "as a general proposition ... statutory 'notwithstanding' clauses" work to "sweep aside potentially conflicting laws." *United States v. Novak,* 476 F.3d 1041, 1046 (9th Cir.2007) (en banc) (citing *Cisneros v. Alpine Ridge Grp.,* 508 U.S. 10, 18, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993)).

Hooks, 816 F.3d at 559.

Delivery Terms.

(ECF No. 40 at 9.)  In any event, the Court finds no express statement in the Sales Order Confirmation that would override the terms in the General Contract.  See Cal. Com. Code § 2316(1) ("Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other.").  Thus, in the absence of reference to the implied warranties in the Sales Order Confirmation, the Court finds the language in the contract Section 6.4 could be sufficient if it is conspicuous, as also required under the California Commercial Code.  However, no parties presented any argument concerning the conspicuousness requirement.[11]  Although subdivision 3(a) alleviates the requirement to use specific terms if the "language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty," Cal. Com. Code § 2316(3)(a), the writing still must be conspicuous, Cal. Com. Code § 2316(2).  See, e.g., In re Google Phone Litig., No. 10-CV-01177-EJD, 2012 WL 3155571, at *8 (N.D. Cal. Aug. 2, 2012); Robinson v. S. Pac. Homes, No. G034371, 2006 WL 181595, at *5 (Cal. Ct. App. Jan. 25, 2006) ("In addition to the purchase agreement using language that 'in common understanding ... makes plain there is no implied warranty' . . . the disclaimer was conspicuous.").

" 'Conspicuous,' with reference to a term, means so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it."  Cal. Com. Code § 1201(10).  "Whether a term is 'conspicuous' or not is a decision for the court."  Id.  The Commercial Code gives examples of what would be conspicuous writings:

Conspicuous terms include both of the following:

(A) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size.

(B) Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the

---

[11]  Again, it would have been helpful to the Court if counsel for Plaintiffs made an appearance at the hearing to discuss whether this argument was ever raised or waived in meet and confer discussions.  Again, the Court could have deemed the opposition withdrawn and simply found the issue of conspicuousness waived.  See L.R. 230(i).  Defendant conceded at the hearing that the provision does require the writing to be conspicuous.

> surrounding text of the same size, or set off from surrounding text
> of the same size by symbols or other marks that call attention to
> the language.

Cal. Com. Code § 1201(10)(A)-(B).

"In making the determination as to whether a provision is conspicuous, the court must 'review the conspicuousness of the disclaimer in the context of the entire contract, and in light of the sophistication of the parties.' " In re Google Phone Litig., 2012 WL 3155571, at *7 (quoting Medimatch, Inc. v. Lucent Techs., Inc., 120 F.Supp.2d 842, 860 (N.D. Cal. 2000); see also Sierra Diesel Injection Serv., Inc. v. Burroughs Corp., 890 F.2d 108, 114 (9th Cir. 1989) ("Whether a disclaimer is conspicuous is not simply a matter of measuring the type size or looking at the placement of the disclaimer within the contract[;] [a] reviewing court must ascertain that a reasonable person in the buyer's position would not have been surprised to find the warranty disclaimer in the contract . . . [a] factor to consider is the sophistication of the parties . . . [and] [a]lso relevant as to whether a reasonable person would have noticed a warranty disclaimer are the circumstances of the negotiation and signing.").

Here, given the terms as written and the authority interpreting conspicuousness, the Court cannot say the warranty term was conspicuous. Section 6 has the heading: "Warranties and limitation of liability." The typeface is the same font type and size as the rest of the body of the Contract, and is not in all capitalized letters or emphasized. Under the heading, is Section 6.1 which first describes the express warranty. Then, in the fourth Section under the heading, the waiver of implied warranties is stated, only mentioning "implied warranty" one time in the clause.

The Court has not located any caselaw upholding a warranty disclaimer as conspicuous where the typeface is the exact same size and emphasis as the remainder of the surrounding contract terms. Despite utilizing language that *may* be sufficient, to a perhaps sophisticated party, as "language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty," Cal. Com. Code § 2316(3)(a), given the less than absolutely clear terms of the provision itself (*i.e.*, discussion of notwithstanding above), and the lack of any common elements (*i.e.* fonts, headings) that could

1    establish conspicuousness, the Court cannot find the implied warranties are waived under the

2    requirements of the California Commercial Code at this stage.  See Robinson, 2006 WL 181595,

3    at *5 ("In addition to the purchase agreement using language that 'in common understanding ...

4    makes plain there is no implied warranty' . . . the disclaimer was conspicuous; the words 'AS IS,

5    WITHOUT WARRANTY' were capitalized, and clearly communicated that the only warranties

6    were those 'SPECIFIED IN THIS AGREEMENT.' "); In re Google Phone Litig., 2012 WL

7    3155571, at *8 ("In light of the contrasting type, size, and font of the heading and the body text

8    of the disclaimer, however, a reasonable person purchasing the Google Phone ought to have

9    noticed it.").[12]

10       The Court recognizes the examples provided in the Commercial Code are not

11   requirements.  See Vardanyan, 2016 WL 7378545, at *6  ("In other words, the term conspicuous

12   'includes,' but is not limited to, matters with pronounced headings or text.").  However, there is

13   no distinction in the text of the Contract that the Court can look to.  See Universal-Prod. Int'l,

14   LLC v. Omega Prod. Int'l, Inc., No. E065096, 2017 WL 1506742, at *5 (Cal. Ct. App. Apr. 27,

---

[12]   See also Minkler v. Apple, Inc., 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) ("Here, Apple's Hardware Warranty disclaimed all implied warranties in accordance with California law because it stated in clear language and capitalized formatting that Apple 'disclaims all statutory and implied warranties, including without limitation, warranties of merchantability and fitness for a particular purpose and warranties against hidden or latent defects[,]' [t]he disclaimer is in writing, conspicuous, and mentions merchantability [and] [f]urthermore, Apple's Software Licensing Agreement prominently and conspicuously states that Apple Maps is sold 'as is,' thereby excluding all implied warranties under California law."); Vardanyan v. Costa Rica Travel Plan., Inc., No. B266292, 2016 WL 7378545, at *6 (Cal. Ct. App. Dec. 20, 2016) ("That paragraph has the heading 'APPLICABLE LAW' in italicized, capitalized print [and] [t]herefore, although the text of the clause was set forth in the same sized font as that of other sections, it was not 'buried in a sea' of same-sized print."); Signal Hound, Inc. v. Expandable Software, Inc., No. C21-5448 BHS, 2022 WL 888353, at *4 (W.D. Wash. Mar. 25, 2022) ("The warranty disclaimer is conspicuous . . . on the first page of a two-page contract, and it includes the heading, 'WARRANTY' in bold and capital letters . . . [t]he provision only contains three sentences after the title, the last of which states [the] . . . warranty is in lieu of all other warranties expressed or implied, including, but not limited to, the implied warranties of merchantability and fitness for a particular purpose . . . [and] [t]he fact that the title says 'warranty' and not 'disclaimer of warranty' or something similar does not change the analysis [and] [t]he disclaimer is by no means hidden or difficult to find, and it clearly disclaims the implied warranty of fitness for a particular purpose."); Hammond Enterprises Inc v. ZPS Am. LLC, No. C-12-03600(EDL), 2013 WL 5814505, at *4 (N.D. Cal. Oct. 29, 2013) ("Although the entire term sheet is written in small typeface, the disclaimer of implied warranties is all in capitalized letters and is introduced with a separate, bold heading, distinguishing the disclaimer from the surrounding paragraphs [and] [a]dditionally, Plaintiffs are sophisticated merchants that regularly purchase machining equipment."); Agricola Cuyuma SA v. Corona Seeds, Inc., No. CV178220DMGJPRX, 2018 WL 6185969, at *13 (C.D. Cal. Aug. 27, 2018) ("Here, the implied warranty disclaimers are conspicuous under the California Commercial Code. They appear in all capital letters, whereas the remaining language uses normal sentence capitalization."); Tabak v. Apple, Inc., No. 19-CV-02455-JST, 2020 WL 9066153, at *16 (N.D. Cal. Jan. 30, 2020) ("First, the Court concludes that the disclaimer is conspicuous because it is located on the top of the first page of the Limited Warranty and it is written in relatively large and capitalized font.").

2017) (" 'Conspicuous' is defined as being 'so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it,' considering the headings, surrounding text, lettering size, font, and color." (quoting Cal. Com. Code § 1201(10))). This may be fatal to the disclaimer in of itself. Id. at *6 ("In order to have a valid disclaimer provision, it must be in clear and distinct language and prominently set forth in large, bold print in such position as to compel notice . . . the court reviewed the disclaimer provision and found that its position did not compel notice even though Universal's representatives may have signed and initialed the subject documents [and] [a]lthough the recipient of the goods would typically sign a delivery form, the alleged warranty disclaimer provision appears only on the reverse side of that delivery form and is printed in small, faded lettering that is difficult to read."); see also Hammond, 2013 WL 5814505, at *3 ("In considering whether a disclaimer is conspicuous, relevant factors include the size of the disclaimer, color of the font, the location of the disclaimer within the document at issue, and whether there is a heading calling attention to the disclaimer [and] [t]he sophistication of the parties and the circumstances of the negotiation and signing of the contract are also factors.").

In light of no apparent factors supporting the text of the contract disclaimer being conspicuous in of itself, and no arguments presented in briefing, the Court finds a final decision on the disclaimer of the implied warranties is more appropriate at the summary judgment stage where the Court can consider the sophistication of the parties in relation to the circumstances of the negotiation and signing. See Sierra Diesel, 890 F.2d 108, 114 ("Whether a disclaimer is conspicuous is not simply a matter of measuring the type size or looking at the placement of the disclaimer . . . [a] factor to consider is the sophistication of the parties . . . [and] [a]lso relevant as to whether a reasonable person would have noticed a warranty disclaimer are the circumstances of the negotiation and signing."); Augustine v. Natrol Prod., Inc., No. 3:13-CV-3129-H DHB, 2014 WL 2506284, at *5 (S.D. Cal. May 15, 2014) ("Defendant's arguments regarding disclaimers are better suited for the summary judgment stage of the litigation, when the Court has the benefit of a more developed record. (citing In re Google Phone Litigation, 2012 WL 3155571 at *7); Broberg v. The Guardian Life Ins. Co. of Am., 171 Cal. App. 4th 912, 922–

23, 90 Cal. Rptr. 3d 225, 233 (2009) ("To say the very least, the placement and format of the disclaimer language at issue in this case are not "conspicuous" as that term is used in related contexts . . . In short, this issue is not one that can be decided as a matter of law on demurrer."); see also Agricola, 2018 WL 6185969, at *13 ("In making such a determination, [t]he court must 'review the conspicuousness of the disclaimer in the context of the entire contract, and in light of the sophistication of the parties[,]' [and] [t]he court's analysis 'is not simply a matter of measuring the type size or looking at the placement of the disclaimer within the contract,' but rather, '[a] reviewing court must ascertain that a reasonable person in the buyer's position would not have been surprised to find the warranty disclaimer in the contract.' " (quoting In re MyFord Touch Consumer Litig., 291 F. Supp. 3d 936, 951 (N.D. Cal. 2018))).

Accordingly the Court recommends that Defendant Olam's motion to dismiss the fifth and seventh causes of action be denied based on the current arguments and record.

### D. The Court Recommends Denying Defendant's Motion to Dismiss Plaintiffs' Tenth Claim for Relief for Restitution Based on Unjust Enrichment

Defendant Olam submits that Plaintiffs' Tenth Claim for Relief is time-barred.

1. Party Arguments

Defendant proffers there are two possible limitations periods for unjust enrichment claims: three years pursuant to California Code of Civil Procedure ("CCP") § 338, and two years pursuant to CCP § 339. Defendant argues the three year limitations period applies only to recovery of money "obtained by fraud or mistake." Creditors Collection Serv. v. Castaldi, 38 Cal. App. 4th 1039, 1044, 45 Cal. Rptr. 2d 511 (1995) ("While Code of Civil Procedure section 339 applies generally to quasi-contract actions as actions 'upon a contract, obligation or liability not founded upon an instrument of writing,' Code of Civil Procedure section 338, subdivision (d) applies more specifically to those quasi-contract actions which seek recovery of money obtained by fraud or mistake."). Defendant contends that because no fraud or mistake in the payment of money from Arte Sano to Smirk's, or from Smirk's to Olam has been alleged or can be alleged, the two year limitations period set forth in CCP § 339 applies.

Defendant argues that since the two year limitations period started running not later than

1    April 28, 2020—and the complaint was not filed until July 20, 2022—the restitution claim is

2    time barred under CCP 339.  Plaintiffs respond that Olam ignores the fact that Arte Sano did its

3    due diligence and conducted an almost two year investigation into the source of the metal wire in

4    the cashew flour (FAC ¶¶ 24 – 25); that during that time, Arte Sano contacted Olam and Smirks,

5    and they specifically requested that a third-party investigator examine the cashew flour for

6    contamination; and that investigation, which was concluded on or about March 22, 2022, only

7    four months before the Complaint was filed, determined that the metal wire came from the

8    cashew flour and not some other outside source.

9         Plaintiffs do not appear to directly dispute Defendant's proffer that the two year statute of

10   limitations applies under California law.  Plaintiffs first suggest that unjust enrichment accrued

11   when it was unjust retained.  See Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1370, 108

12   Cal. Rptr. 3d 682, 699 (2010) ("Under the law of restitution, [a]n individual is required to make

13   restitution if he or she is unjustly enriched at the expense of another . . .  [and] [t]he person

14   receiving the benefit is required to make restitution only if the circumstances are such that, as

15   between the two individuals, it is *unjust* for the person to retain it.") (first alteration in original)

16   (citations and quotation marks omitted).  Plaintiffs emphasize the essence of unjust enrichment is

17   the unjust *retention* of a benefit at the expense of another.  See Lectrodryer v. SeoulBank, 77

18   Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881 (2000) (plaintiffs "satisfied the elements for a claim

19   of unjust enrichment: receipt of a benefit and unjust retention of the benefit at the expense of

20   another.").

21        While Defendant argues the statute of limitations began to accrue at the time of the

22   discovery of the metal wire on April 28, 2020, Plaintiffs suggest this is not the law.  Plaintiffs

23   state this but do not provide any legal authority for this direct proffer, as Defendant notes in

24   reply.  Plaintiffs specifically argue that upon completion of its investigation, Arte Sano sent a

25   demand letter to Olam on November 16, 2021, and that once Olam rejected Arte Sano's demand,

26   it became unjust for Olam to retain the benefit it had received at the expense of Arte Sano, and

27   thus the statute of limitations began to accrue at this time, on or after November 16, 2021.

28        Plaintiffs also seem to argue a form of equitable tolling or delayed discovery rule, in that

1   they also argue Arte Sano did its due diligence to ensure that it had a valid claim based on factual

2   evidence; that it should not be penalized now for doing the hard work to avoid meritless legal

3   claims by having Olam argue the statute of limitations began running on April 28, 2020; and

4   such a finding would be against public policy and would encourage parties to file legal claims

5   when they have no evidence, simply because of the fear of the statute of limitations.  Plaintiffs

6   submit that Arte Sano filed its complaint four months after the third-party investigator completed

7   its final report, and the claim for unjust enrichment is therefore timely.

8        Defendant replies framing Plaintiffs' arguments as: (1) accrual of its claim was tolled

9   until prefiling settlement talks reached an impasse, and (2) accrual was tolled while a causal

10  investigation of the alleged flour contamination was underway.  Defendant argues Plaintiffs offer

11  no authority to support these novel assertions, and without saying as much, seem to be arguing

12  that the Court should invoke the doctrine of equitable tolling.  Defendant argues the doctrine is

13  not applicable to this case.  Specifically, Defendant highlights that Plaintiffs plainly allege that

14  Arte Sano had notice of the contaminated flour on April 27 and 28, 2020, and therefore, no

15  "delayed discovery" or "concealed defect" argument can be advanced, as a claim accrues when

16  the plaintiff has suffered "the infliction of appreciable and actual harm, however uncertain in

17  amount."  Davies v. Krasna, 14 Cal.3d 502, 514 (1975).  Thus, Defendant submits that assuming

18  the facts alleged in the complaint are true, subrogee Arte Sano suffered appreciable and actual

19  harm when it discovered contaminants in its cashew flour in April of 2020, even if settlement

20  talks were underway, and even if investigations were still to be performed.  Defendant argues

21  that equitable tolling "comes into play if the defendant takes active steps to prevent the plaintiff

22  from suing in time, as by promising not to plead the statute of limitations," Santa Maria v.

23  Pacific Bell, 202 F.3d 1170, 1176 (9th Cir. 2000), and nothing in the complaint suggests Olam

24  did anything to induce Arte Sano or Berkley to delay filing their lawsuit.  (Reply 11.)[13]

25

26  [13] However, the Court notes the full context of this citation by Defendant, in that it refers to equitable estoppel and not equitable tolling:

27        Equitable estoppel focuses primarily on the actions taken by the defendant in
        preventing a plaintiff from filing suit, whereas equitable tolling focuses on the

28        plaintiff's excusable ignorance of the limitations period and on lack of prejudice

2.     The Court Recommends Denying the Motion to Dismiss

The Court recommends denying the motion to dismiss at this stage for multiple reasons. First, while Plaintiffs did not appear to directly dispute that the two year statute of limitation applies rather than the three year period,[14] the answer is not so clear based on the limited authority provided by Defendant.  See Creditors Collection Serv., 38 Cal. App. 4th at 1043–44 ("[A] specific limitations provision prevails over a more general provision . . . Code of Civil Procedure section 338, subdivision (d) applies more specifically to those quasi-contract actions which seek recovery of money obtained by fraud or mistake.") (citations omitted).  As one court of appeal recently stated:

> For a claim of restitution or unjust enrichment (see *Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1314 [restitution and unjust enrichment "synonymous"]), the statute of limitations is three years. (See § 338, subd. (d) ["action for relief on the ground of fraud or mistake"]; *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1132 ["Ordinarily, restitution is required only if ' "the benefits were conferred by mistake, fraud, coercion or request." ' "].)

Ayala Boring, Inc. v. HPS Mech., Inc., No. F081857, 2022 WL 3354875, at *6 (Cal. Ct. App. Aug. 15, 2022); see Prakashpalan v. Engstrom, Lipscomb & Lack, 223 Cal. App. 4th 1105, 1132, 167 Cal. Rptr. 3d 832, 855 (2014) ("It is not, strictly speaking, a theory of recovery [] but an effect: the result of a failure to make restitution under circumstances where it is equitable to do

> to the defendant. *See Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir.1981). A finding of equitable estoppel rests on the consideration of a non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied. *See id.* The Seventh Circuit has further explained that equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations.... Equitable estoppel in the limitations setting is sometimes called fraudulent concealment." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450–51 (7th Cir.1990). Equitable estoppel may apply against an employer when the employer misrepresents or conceals facts necessary to support a discrimination charge. *See Rhodes v. Guiberson Oil Tools Division,* 927 F.2d 876, 878–79 (5th Cir.1991).

Santa Maria, 202 F.3d at 1176–77.

[14] Once again, Plaintiffs' presence at the hearing on this motion would have been helpful to clarify their position.

30

so . . . [i]t is synonymous with restitution . . . [and] [o]rdinarily, restitution is required only if the benefits were conferred by mistake, fraud, coercion or request." (citations and internal quotation marks omitted).

Further, the Court finds that even if the two year period is applicable, accrual may be delayed on the restitution claim.  See Thieriot v. AIG Matched Funding, No. C 07-05069 JW, 2008 WL 11409479, at *5 (N.D. Cal. May 8, 2008) ("Quasi-contract claims, such as restitution, are subject to a two year statute of limitations . . . [h]owever, this period is not deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party." (citing Cal. Civ. Proc. § 339(1)).  "As with the limitations period itself, we borrow our rules for equitable tolling of the period from the forum state, California."  Cervantes v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir. 1993).  "Equitable tolling of a statute of limitations may suspend or extend the limitations period."  Holmes v. Baughman, No. 220CV1496KJMDBP, 2022 WL 298773, at *1 (E.D. Cal. Feb. 1, 2022) (citing McDonald v. Antelope Valley Cmty. Coll. Dist., 45 Cal. 4th 88, 99 (2008)).

"Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: (1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith."  Holmes, 2022 WL 298773, at *1 (quoting Fink v. Shedler, 192 F.3d 911, 916 (9th Cir. 1999)); Taie Weie Enter. Co, Ltd v. Tech. Aquatic Associated Mfg., No. CV 20-3427-RSWL-JCX, 2021 WL 8572628, at *4 (C.D. Cal. Apr. 23, 2021).  "California courts apply equitable tolling 'to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice.' "  Holmes, 2022 WL 298773, at *1 (quoting Jones v. Blanas, 393 F.3d 918, 928 (9th Cir. 2004)  "Application of California's equitable tolling doctrine 'requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the ... limitations statute."  Id.

"The doctrine of delayed discovery requires a plaintiff to plead facts showing an excuse for late discovery of the facts underlying his cause of action."  Kelley, 2009 WL 3489422, at *5

1    (citing Prudential Home Mortgage Co. v. Superior Court, 66 Cal.App.4th 1236, 1247, 78

2    Cal.Rptr.2d 566 (1998)).  "The plaintiff must show that it was not at fault for failing to discover

3    or had no actual or presumptive knowledge of facts sufficient to put it on inquiry."  Id.  "As to

4    sufficiency of delayed discovery allegations, plaintiff bears the burden to 'show diligence' and

5    'conclusory allegations' will not withstand dismissal."  Kelley, 2009 WL 3489422, at *5

6    (quoting Fox, 35 Cal. 4th at 808).  "To rely on the delayed discovery of a claim, '[a] plaintiff

7    whose complaint shows on its face that his claim would be barred without the benefit of the

8    discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2)

9    the inability to have made earlier discovery despite reasonable diligence.' "  Kelley, 2009 WL

10   3489422, at *5 (quoting Fox v. Ethicon Endo–Surgery, Inc., 35 Cal.4th 797, 808, 27 Cal.Rptr.3d

11   661, 110 P.3d 914 (2005)).  "In order to adequately allege facts supporting a theory of delayed

12   discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the

13   injury, he or she could not have reasonably discovered facts supporting the cause of action within

14   the applicable statute of limitations period."  Fox, 35 Cal. 4th at 809.

15       "While equitable tolling is a fact-intensive analysis more appropriate for summary

16   judgment or trial, a plaintiff nonetheless must at a minimum plead 'facts showing the *potential*

17   applicability of the equitable tolling doctrine' to survive a motion to dismiss."  Taie Weie Enter.

18   Co, Ltd v. Tech. Aquatic Associated Mfg., No. CV 20-3427-RSWL-JCX, 2021 WL 8572628, at

19   *4 (C.D. Cal. Apr. 23, 2021) (quoting Cervantes v. City of San Diego, 5 F. 3d 1273, 1276 (9th

20   Cir. 1993)).  In addition to it being unclear whether the two or three year period would apply to

21   Plaintiffs' claim, the Court finds Plaintiffs' complaint pleads facts showing the *potential*

22   applicability of the equitable tolling doctrine to survive a motion to dismiss.  See id.

23   Specifically, Plaintiffs allege that between May 2020 and December 2020, Arte Sano

24   investigated the cause of the contamination through the use of third parties and that on or about

25   March 22, 2022, Arte Sano (through counsel and at the direct request of representatives from

26   both Olam and Smirk's) received final confirmation from a third-party investigator that cashew

27   flour lot number 6600023175/1 was the source of the contamination for both the contaminated

28   finished cashew flour tortillas as well as the contaminated sealed, unopened boxes of cashew

1  flour from Olam.  (FAC ¶¶ 24-25.)

2        The issue of when Plaintiffs "discovered or *should have* discovered that his or her injury

3  had a wrongful cause" would thus be better decided at summary judgment.  <u>Marino v.</u>

4  <u>Countrywide Fin. Corp.</u>, 602 F. App'x 403, 405 (9th Cir. 2015) (emphasis in original) (quoting

5  <u>Fox</u>, 35 Cal.4th at 27); <u>see Javier v. Assurance IQ, LLC</u>, No. 20-CV-02860-CRB, 2023 WL

6  114225, at *7 (N.D. Cal. Jan. 5, 2023) ("The question when a plaintiff actually discovered or

7  reasonably should have discovered the facts for purposes of the delayed discovery rule is a

8  question of fact unless the evidence can support only one reasonable conclusion." (quoting

9  <u>Ovando v. County of Los Angeles</u>, 159 Cal. App. 4th 42, 61, 71 Cal.Rptr.3d 415 (2008))); <u>but</u>

10  <u>see Murillo v. Homebridge Fin. Servs., Inc.</u>, No. CV 19-1328 PA (JEMX), 2019 WL 3064471, at

11  *3 (C.D. Cal. May 22, 2019) ("In assessing the sufficiency of the allegations of delayed

12  discovery, the court places the burden on the plaintiff to show diligence; conclusory allegations

13  will not withstand demurrer.") (citation and internal quotations omitted).

14        Accordingly, the Court recommends denying Defendant's motion to dismiss the tenth

15  cause of action based on the current record.  <u>See Ayala Boring</u>, 2022 WL 3354875, at *6 ("For a

16  claim of restitution or unjust enrichment  . . . the statute of limitations is three years."); <u>Holmes</u>

17  <u>v. Baughman</u>, No. 220CV1496KJMDBP, 2022 WL 298773, at *2 (E.D. Cal. Feb. 1, 2022)

18  ("Plaintiff has made a plausible showing that he may be able to prove he is entitled to equitable

19  tolling of the statute of limitations[,] [however] [t]o be clear, by finding that plaintiff has shown

20  he might be entitled to equitable tolling, this court is not making any findings or conclusions that

21  plaintiff has made any such showing or that he is entitled to equitable tolling [and] [b]ecause

22  equitable tolling is a fact-specific question, it must be resolved in a motion for summary

23  judgment . . . [the] court will dismiss the motions to dismiss without prejudice to their renewal as

24  motions for summary judgment." (citing <u>Cervantes</u>, 5 F.3d at 1276)).

25  ///

26  ///

27  ///

28  ///

## V.

## RECOMMENDATION

For the above explained reasons, IT IS HEREBY RECOMMENDED that Defendant Olam's motion to dismiss (ECF No. 40), as applied to Plaintiffs' first amended complaint (ECF No. 27), be GRANTED IN PART and DENIED IN PART as follows:

1.    Defendant's motion to dismiss the second cause of action for breach of contract (third party beneficiary) be GRANTED without leave to amend;

2.    Defendant's motion to dismiss the fifth claim for relief (breach of implied warranty of merchantability) and seventh claim for relief (breach of implied warranty of fitness for particular purpose) be DENIED; and

3.    Defendant's motion to dismiss the tenth cause of action (restitution based on quasi-contract (unjust enrichment)) be DENIED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of these recommendations, Plaintiff may file written objections to the findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 28, 2023**

UNITED STATES MAGISTRATE JUDGE